UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                                    CORRECTED
                                                     DECISION AND ORDER
vs.                                                  6:10-CR-6022-CJS-MWP-4

LEVON STURGIS,[1]
                           Defendant.

_____

Now before the Court is an application (ECF No. 663) by Levon Sturgis

("Defendant") for "compassionate release" pursuant to 18 U.S.C. § 3582(c)(1)(A)." The

application is denied.

## BACKGROUND

In a prior Decision and Order (ECF No. 611) in this action, the Court described the

factual background of Defendant's conviction as follows:

> On February 4, 2010, a federal grand jury returned a four count Indictment
> against the defendant, Levon Sturgis . . .   and [ten] co-defendants.   Sturgis
> was charged in Count 1 with a violation of 21 U.S.C. § 846, conspiracy to
> possess with intent to distribute, and to distribute, five kilograms or more of
> cocaine, 50 grams or more of cocaine base, and one kilogram or more of
> heroin.
>
> Facing mandatory life imprisonment based on two prior drug felony
> convictions, Sturgis chose to accept a plea offer from the government. On
> January 5, 2012, pursuant to a written plea agreement, Sturgis appeared
> before this Court and entered a plea of guilty to Count 1 of the indictment.
> . . .   The parties agreed [as part of the plea agreement] that Sturgis's
> sentence range was 262 to 327 months; however the parties reserved their
> right to recommend a sentence outside of that range.

_____

[1]  BOP Reg. No. 15407-040.

> [The parties agreed in the plea agreement that for purposes of the advisory sentencing guidelines, Sturgis was a "career offender" within the meaning of Guideline § 4B1.1(b)(1), based on two prior drug felony convictions.
>
> ***
>
> During the course of the plea colloquy . . . [Sturgis further] acknowledged and agreed that based upon two prior drug felonies, he was a Career Offender under Guidelines § 4B1.1(b) . . ., and based upon the 2007 conviction, he was subject to enhanced sentencing under 21 U.S.C. § 841(b)(1)(A).   [Sturgis acknowledged that under the plea agreement, the minimum sentence that he could receive was 240 months, and the maximum was life.]
>
> ***
>
> On April 3, 2012, Sturgis appeared before this Court for sentencing. After making the requisite findings under 18 U.S.C. § 3553(e), this Court sentenced Sturgis [below the advisory guideline sentencing range,] to the statutory mandatory minimum sentence of 240 months imprisonment, 10 years of supervised release, a $2,000 fine and a $100 special assessment. No appeal was taken.

*Id.* (quoting Govt's Response [#469] at pp. 1-4 (citations to record omitted)).

According to the Federal Bureau of Prisons ("BOP"), Defendant is presently 48 years of age and scheduled for release in seven years, on November 8, 2027. Defendant is presently housed at Fort Dix FCI ("Fort Dix").   According to BOP, among BOP facilities, Fort Dix presently has the second-highest numbers of inmates (238) and staff (18) that have tested positive for Covid-19.[2]   Of those, 41 inmates and 6 staff have already recovered, and no inmates or staff have died.

On June 18, 2020, Defendant, represented by the Office of the Federal Public Defender for the Western District of New York, filed an application for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 663).   Defendant maintains that there

---

[2] See, https://www.bop.gov/coronavirus/   (last checked November 18, 2020).

are "extraordinary and compelling reasons" to grant the application, namely, "his serious health issues in the context of the ongoing COVID-19 pandemic."[3]

In support of this request, the application indicates that Defendant should be granted compassionate release for the following reasons: 1) he has completed almost 60% of his sentence; 2) it is not feasible for him to practice "social distancing" at Fort Dix, where he resides in a pod along with ten other inmates; 3) he is at greater risk if he contracts Covid-19 because he is obese and has hypertension and hypothyroidism; and 4) his "crime of conspiring to distribute controlled substances . . . although certainly serious, involved neither weapons nor allegations of violence, " "[h]e is not affiliated with any gangs or other violent organizations," and "[h]e is eager to prove to the Court that if released he can live a peaceful and law abiding life."[4]   Defendant states that if he is released, he would reside with his niece in the City of Rochester, where "[h]e would have the ability to quarantine at home."[5]

Regarding Defendant's medical condition, he has submitted certain medical records, which confirm that he has the conditions indicated.   However, those records also indicate that his hypothyroidism is "controlled on current medication" while his hypertension is "poorly controlled secondary to noncompliance," with the "noncompliance" evidently referring to a failure to heed his doctor's instructions regarding "the need to control daily blood pressure via diet, exercise and medication compliance."[6]

---

[3] ECF No. 663 at p. 3.
[4] ECF No. 663 at p. 14.
[5] ECF No. 663 at p. 14.
[6] ECF No. 663 at pp. 24, 27.

Defendant's application states that it was filed after he complied with the administrative exhaustion requirements contained in 18 U.S.C. § 3582(c)(1)(A). Specifically, Defendant contends that when he filed the motion, more than thirty days had elapsed since he sent a letter to the warden at Fort Dix requesting compassionate release. [7]  The letter that Defendant sent to the warden requested compassionate release based on Defendant's "out of control" "high blood pressure," but did not mention obesity or hypothyroidism. [8]

On June 29, 2020, the Government filed a response (ECF No. 664), which maintains that the application is both unexhausted and lacking in merit.  Regarding exhaustion, the Government indicates that although Defendant submitted the letter mentioned earlier to the warden at Fort Dix, the warden responded by informing Defendant that he needed to "submit a release plan before his request for a reduction in sentence could be evaluated," which Defendant never did. [9]

Regarding the merits of the application, the Government maintains that Defendant has shown neither that there are "extraordinary or compelling reasons" why the Court should grant the request, nor that the factors listed in 18 U.S.C. § 3553(a) weigh in his favor.  The Government indicates, for example, that Defendant "still owes nearly half of his 240-month sentence"; that his medical conditions are well managed at Fort Dix; and

---

[7]  ECF No. 663, Exhibit E.

[8]  ECF No. 663 at p. 29 ("My medical condition, being high blood pressure, is out of control[.]").   Later in the same letter, Defendant refers to unspecified "pre-existing health problems." *Id.* at 30.

[9]  ECF No. 664 at pp. 2-3. As discussed below, the Government notes that Defendant recently produced a letter, dated May 6, 2020, that purportedly responds to the warden's request, but indicates that officials at Fort Dix have no record of receiving the letter.

that he is classified by BOP as having a high risk of recidivism.[10]   The Government also

states that Defendant is classified by BOP as "Medical Care Level 2," "which is reserved

for inmates with stable medical conditions that nonetheless require chronic care and

monitoring by the medical staff," and that "[a]ccording to the facility, Mr. Sturgis is not on

the medical 'high risk' list, meaning the facility determined that he does not have a medical

condition that would place him at high risk were he to contract COVID-19." The

Government further indicates that officials at Fort Dix have taken a variety of enumerated

steps to mitigate the spread of Covid-19 at the facility, such as implementing guidelines

from the CDC and World Health Organization, suspending all visits to the facility, and

separating "high risk" inmates from the rest of the population.

As for the "§ 3553(a) factors," the Government notes that the circumstances of

Defendant's crime are very serious, insofar as they involve him conspiring to possess

large quantities of drugs, including more than a kilo of heroin, to sell for his personal gain.

The Government therefore argues that even assuming that Defendant could demonstrate

extraordinary and compelling health reasons to justify his application, the § 3553(a)

factors nevertheless weigh against granting the request.

The Government indicates that Defendant's disciplinary record at Fort Dix is

relatively limited, though he was convicted of disciplinary infractions in 2019 and 2015,

both involving possession of dangerous tools.

On November 12, 2020, the Court received a letter from Defendant (ECF No. 668),

submitted *pro se*, in which he notes that there has been an "uptick" in Covid-19 cases at

---

[10]  ECF No. 664 at p. 8.

Fort Dix since he filed his application. In that regard, though, the number of Covid-19

cases at Fort Dix that the Court quoted earlier is the current number, not the lower number

that existed when Defendant filed his application.

The Court has carefully considered the parties' submissions.

ANALYSIS

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1)(A),

which gives a trial court discretion to modify a term of imprisonment or supervised release

only

> upon motion of the Director of the Bureau of Prisons, or upon motion of the
> defendant after the defendant has fully exhausted all administrative rights
> to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request
> by the warden of the defendant's facility, whichever is earlier . . . .

§ 3582(c)(1)(A).   An inmate's failure to exhaust administrative remedies for a

compassionate release request is a "glaring roadblock foreclosing compassionate

release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).   Where a

Defendant has complied with the exhaustion requirement,

> a district court "may reduce" the term of a defendant's imprisonment "if it
> finds that ... extraordinary and compelling reasons warrant such a
> reduction." 18 U.S.C. § 3582(c)(1)(A). The determination as to what
> constitutes extraordinary and compelling reasons warranting a reduction is
> committed to the sound discretion of the district court. *United States v.
> Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020) (holding that "the First Step
> Act freed district courts to consider the full slate of extraordinary and
> compelling reasons that an imprisoned person might bring before them in
> motions for compassionate release").[11]  Prior to reducing a defendant's term
> of imprisonment, however, a district court must consider "the factors set

---

[11] *See also, U.S. v. Brooker*, 976 F.3d at 237 (Indicating that nothing "in the now-outdated version of
Guideline § 1B1.13, limits the district court's discretion.").

forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

*United States v. Roney*, No. 20-1834, 2020 WL 6387844 (2d Cir. Nov. 2, 2020) (footnote omitted).

Exhaustion of Administrative Remedies

As noted above, 18 U.S.C. § 3582(c)(1)(A) provides that a defendant may bring a motion for compassionate release upon the earlier of his full exhaustion of "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."

"[R]egardless of whether [§ 3582(c)(1)(A)] is a jurisdictional or a claim-processing rule, its exhaustion requirements are clearly mandatory." *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300 at \*3 (S.D.N.Y. Apr. 14, 2020). The Supreme Court has stated that claim-processing rules created by express statutory directive are mandatory, while only judge-made rules are "amendable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). *See also, Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (stating, "as a general rule, courts are required to strictly enforce statutory exhaustion requirements."). Congress has drafted § 3582(c)(1)(A) such that its "exhaustion proscription is clear as day." *Ogarro*, 2020 WL 1876300 at \*3

7

(citations omitted).

Here, the parties disagree as to whether Defendant exhausted his administrative remedies.   Defendant maintains that he did so by submitting a letter, attached to his motion as Exhibit E, to the warden at Fort Dix on April 28, 2020.[12]   The motion does not indicate that Defendant submitted anything else to the warden.   Although, Defendant's motion also contains this statement:

> In his request to Warden David E. Ortiz, Mr. Sturgis stated, "I will enroll in Health First insurance as soon as I am released. I would be able to manage my out-of-control hypertension…by being able to formulate a positive treatment plan with my health care provider….when I am permitted to obtain gainful employment, I will work for Triple 8 Cleaning and Rehab in Rochester, NY."

ECF No. 663 at p. 14.   However, this statement does not appear anywhere in Exhibit E. It appears, therefore, that Defendant was quoting from a document that he did not submit along with his application.

The Government, meanwhile, agrees that Defendant submitted Exhibit E to the warden at Fort Dix, but contends that the warden then informed Defendant that his application was incomplete for two reasons:   First, because he failed to specify "the criteria in which [he] would like to file," and second, because he did not include a "release plan."   According to the Government, Defendant never subsequently provided that information to officials at Fort Dix.   The Government states, rather, that after Defendant's motion was filed, Defendant's counsel provided the Government with a letter, dated May 6, 2020, purporting to be Defendant's response to the Warden's denial, which, again, the

---

[12]  ECF No. 663 at pp. 14-15.

Government maintains was never received by officials at Fort Dix.

Nevertheless, the Court also requested that U.S. Probation provide the Court with any information that it could obtain concerning whether Defendant had exhausted his remedies at Fort Dix.   The information obtained by Probation indicates that after Defendant's counsel provided the Government with Defendant's letter dated May 6, 2020, the Government asked BOP whether it had ever received the letter, and officials at Fort Dix responded in the negative.   Further, on July 10, 2020, officials at Fort Dix sent Defendant another communication, indicating that the May 6, 2020 letter "could not be considered" in any event, since Defendant had still failed to designate a valid basis set forth in "BOP Program Statement No. 5050.50" under which he was seeking compassionate release.   This, despite the fact that Defendant's two letters clearly indicated that he was seeking compassionate relief based on the combination of the Covid-19 pandemic and his health condition.

From the foregoing, it appears that in Defendant's case, officials at Fort Dix did not consider the Covid-19 pandemic, together with the risk posed to Defendant by the Covid-19 virus due to his medical condition, to be a *cognizable* basis for seeking compassionate release.   Indeed, those officials indicated that Plaintiff's application, even as supplemented with the information contained in his May 6, 2020 letter, "could not be considered."   Consequently, the Court concludes that under the particular facts of this case, Defendant had *no ability* to exhaust his remedies with the BOP as to the claim that he has now raised before this Court.   The Government's request to have the application denied for lack of exhaustion is therefore denied.

Merits of the Application

As mentioned, before a court may reduce the term of a defendant's imprisonment it must find that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).   Here, Defendant cites the interplay between the Covid-19 Pandemic, the conditions at Fort Dix, and his medical conditions (obesity, hypertension, hypothyroidism) as reasons why the Court should grant him compassionate release.

"Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute 'extraordinary and compelling reasons' warranting relief." *United States v. Brown*, No. 3:16-CR-00019 (VAB), 2020 WL 6536911, at *3 (D. Conn. Nov. 6, 2020) (collecting cases).   Other courts have held that the mere possibility that an inmate with medical issues may contract Covid-19 is not necessarily an extraordinary and compelling reason. *See, e.g., United States v. Scott*, No. 09-CR-341S, 2020 WL 5587122, at *5 (W.D.N.Y. Sept. 18, 2020) ("[A]lthough Scott has demonstrated that he falls into the high-risk group, he nonetheless alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that FCI Butner Low's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he falls ill. To the contrary, it appears that the BOP's efforts are now working. Thus, this Court finds that Scott fails to demonstrate an extraordinary and compelling reason for a sentence reduction based on COVID-19.") (collecting cases).

The Centers for Disease Control and Prevention ("CDC") states that "[s]taff and people incarcerated in correctional and detention facilities are at greater risk for some

illnesses, such as COVID-19, because of the close living arrangements inside the facility."[13]   The CDC further indicates that obese persons "are at greater risk of severe illness[14] from the virus that causes Covid-19," while persons with hypertension "*might be at an increased risk for severe illness*" from that virus.[15]   Moreover, as mentioned earlier, among BOP facilities Fort Dix presently has the second-highest number of confirmed positive Covid-19 cases among inmates and staff, following a recent surge in cases there.

However, these facts do not, in the Court's view, necessarily establish extraordinary and compelling reasons *to reduce Defendant's sentence*.   On this point, the Government argues that "[t]he Bureau of Prisons and FCI Fort Dix more particularly have taken considerable action to mitigate the spread of COVID-19, and the defendant has failed to establish that he would be safer out of custody than he is at the facility." The Court tends to agree.   In this regard the Court notes that the City or Rochester, to which Defendant would return if released from prison, is presently experiencing its own surge in Covid-19 cases, as evidenced by a press release from the Mayor's office, dated November 19, 2020, entitled "News Release – City to Reduce Staffing Levels, City Hall Hours During Coronavirus Surge."[16]

Defendant nevertheless contends that he will be safer outside of prison, since he "would have the ability to quarantine at home."   However, having the ability to quarantine

---

[13] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html

[14] "Severe illness from COVID-19 is defined as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[15] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[16] https://www.cityofrochester.gov/article.aspx?id=21474845842

11

and actually doing it are two different things.   Defendant has a well-documented history of failing to respect rules of conduct, including the penal law and conditions set by courts, making it unlikely that he would adhere to rules recommended by public health officials. As for Defendant's purported concern for his health, the Court notes that he is reportedly already non-compliant with his doctor's treatment recommendations regarding his hypertension.   In sum, the Court has little reason to think that Defendant will be safer in Rochester than at Fort Dix, where he has access to medical care and is required to observe at least some protocols concerning Covid-19.

Additionally, the Court does not find that a sentence reduction is warranted under 18 U.S.C. § 3553(a) in any event, given the facts and circumstances of Defendant's conviction.   Namely, while still on parole from an earlier drug felony conviction,[17] Defendant conspired to possess, with intent to distribute, large quantities of cocaine and heroin, thereby exhibiting a complete disregard for the law and for the safety and well-being of others. *See, e.g., United States v. Pierce*, No. 16-MR-144, 2016 WL 7421925, at *3 (W.D.N.Y. Dec. 23, 2016) ("The controlled substances themselves are dangerous—in particular, heroin is a scourge in this community that is claiming many lives.").

The Court continues to believe that the sentence negotiated by the parties in the Plea Agreement, which drastically lowered Defendant's potential sentence exposure to avoid a mandatory life sentence,[18] is fair, just, reasonable and "sufficient, but not greater

---

[17] *See*, Presentence Investigation Report, ECF No. 409 at p. 17.
[18] *See*, Plea Transcript, ECF No. 467 at p 10 ("THE COURT: Let me stop and talk a little bit about that. Mr. Verrillo obviously negotiated on your behalf to get the government to agree not to file this Information

than necessary, to comply with the purposes set forth in paragraph (2) of [§ 3553(a)]."   A

reduction of that sentence to time served would not reflect the seriousness of the offense,

promote respect for the law, provide just punishment, afford adequate deterrence, or

protect the public from future crimes by the defendant, but, rather, would result in

unwarranted sentencing disparities.   The Court therefore concludes that the § 3553(a)

factors do not warrant a grant of compassionate release in this case.

CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release (ECF No. 663)

is denied.

IT IS SO ORDERED.

DATED:     November 23, 2020
           Rochester, New York

                                          CHARLES J. SIRAGUSA
                                          United States District Judge

---

alleging that you had two prior drug felony convictions. Do you understand that? THE DEFENDANT: Yes, sir. Yes, your Honor. THE COURT: If they did, if they filed that and I determined that you did have two prior drug felony convictions and you were convicted of this conspiracy charge, you know what the minimum sentence you would have to get is? THE DEFENDANT: Yes, sir. THE COURT: What? THE DEFENDANT: Life. THE COURT: Exactly, life. I mean, 20 years is not obviously a walk in the park, which is the minimum sentence you face and under the Guidelines as calculated, it's -- you're looking at 262 to 327 months, but it's not life. Do you understand that? So that is pretty significant. THE DEFENDANT: Yes, sir.").